**Daryel KEEN, et ux., Petitioners,**

v.

**ASHOT ASHKELON, LTD., et al., Respondents.**

**No. C–5392.**

Supreme Court of Texas.

Feb. 10, 1988.

Rehearing Denied April 20, 1988.

Carl Dudensing and Gary B. Webb, Dudensing & Webb, Houston, for petitioners.

Larry W. Wise, Martinec, Hargadon & Wise, Austin, Frank M. Bean and Andrew T. McKinney, Bean & Manning, Houston, for respondents.

## OPINION

MAUZY, Justice.

This is a products liability case. Daryel Keen sued to recover for personal injuries he sustained when a trailer fell over onto the hostler he was driving. The trial court disregarded the jury's answers to issues that found Keen contributorily negligent and rendered judgment in Keen's favor for the full amount of the jury verdict. The court of appeals reversed the trial court's judgment and rendered judgment reducing Keen's damages in accordance with the contributory negligence finding. 709 S.W. 2d 292. Because Keen's contributory negligence constituted a failure to guard against a product defect, we reverse the judgment of the court of appeals and affirm that of the trial court.

Daryel Keen was a hostler driver for Santa Fe Transportation Company. A "hostler" is a motorized vehicle used for pulling loaded trailers from one off-road location to another. When unattached to a truck, these trailers are supported in the front by their "dolly legs." Each "dolly leg" is afforded ground support and stability by a "sand shoe."

Keen and a co-worker, Sam Moody, were relocating two loaded trailers in the Santa

Fe yard. The plan was to position the trailers, one in front of the other with Moody's in the rear. Moody settled his trailer first and began to disengage. Keen pulled his hostler alongside Moody's trailer. Shortly after Moody disengaged his hostler, the loaded trailer sitting on its dolly legs fell over on Keen's hostler and injured him.

Keen sued Ashot Ashkelon which manufactured the sand shoe and Strick Corporation which manufactured and assembled the trailer. Keen also sued the company that loaded the trailer, Arsham Metals. The case was submitted to the jury on issues of negligence and strict liability. The jury refused to find Arsham Metals negligent in the manner in which it loaded the trailer. Instead the jury found that the sand shoe was defective and found Ashot and Strick liable on the theory of products liability. The jury also answered "yes" to the following contributory negligence issue:

*Special Issue No. 7*

Do you find from a preponderance of the evidence that on the occasion in question Daryel Keen moved his hostling tractor beside the trailer-chassis combination when it would not have appeared to a person using ordinary care that such movement could be made with safety?

The jury then found that Keen's negligence was a proximate cause of the occurrence and contributed 50% to cause his injuries. The trial court disregarded these contributory negligence findings and rendered judgment in favor of Keen for the full amount of the jury verdict.

The question before this court is what was the nature of Keen's negligent conduct. In *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984), this court adopted a system of comparative causation for apportioning accident costs. Although the changes wrought by *Duncan* were broad in scope, the opinion expressly noted an important rule that did *not* change. *Duncan* reaffirmed the rule of § 402A comment n of the *Restatement (Second) of Torts* that a negligent failure to discover or guard against a product defect is not a defense against strict liability. Thus, if Keen's conduct constituted a failure to discover or guard against a product defect, it is not a defense against the strict liability of Ashot and Strick.

The court of appeals reasoned that there was sufficient evidence from which a jury could conclude that Keen's conduct amounted to placing himself voluntarily in harm's way. Thereby, the court decided that Keen's conduct did not constitute a failure to guard against a product defect but instead fell within the category of conduct recognized as a defense under *Duncan*. We disagree with the court of appeals' decision.

What the evidence in this case shows is that Keen knew of the risk that trailers could sometimes fall. It was common for trailers to lean; and it was a recognized safety rule not to pull alongside a trailer in motion or one in the disengagement process. However, what Keen did not know was that this particular trailer had a defective sand shoe. As the jury found the facts, the trailer did not fall because of an unbalanced load but instead fell because the sand shoe was defective. Thus, Keen had no knowledge of the dangerous condition that caused the accident.

In *Duncan*, we cited as ongoing authority the case of *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967). That case provides us with an example of the distinction between a failure to guard against a defect and a voluntary encounter of a known danger. Ellen McKisson, a beauty operator, had one of her employees apply a permanent wave solution to her own bleached hair. The wave solution was defective because it contained a high concentration of thioglycolic acid, a depilatory. The jury found that the solution was not reasonably fit for the purpose of giving permanent waves. However, the jury also found that McKisson was negligent because "a reasonably prudent beauty operator in the exercise of ordinary care would have known that the wave lotion should not be applied to bleached hair." Faced with these jury findings, this court nevertheless

determined that McKisson's negligence was in the nature of a failure to discover or guard against a product defect and disallowed it as a defense.

Thus, McKisson took a general risk by applying the wave solution to bleached hair; she knew that ordinarily a different formula was used for bleached than for unbleached hair. However, she did not know of the particular danger that actually caused the accident—i.e. the fact that the solution was not fit for the purpose of giving permanent waves to anyone. Likewise, Keen took a general risk by pulling his hostler beside the trailer, but he did not know of the particular danger that caused the accident.

Keen's contributory negligence amounted to getting too close to a product which turned out to be defective. Because the nature of Keen's negligence was a failure to guard against a defective product, it cannot be used as a defense to reduce the amount of Keen's damage award. As we noted in *Duncan* when we reaffirmed this rule, consumers have a right to rely on product safety. We therefore hold that the trial court properly disregarded the jury's contributory negligence findings.

Ashot Ashkelon has also filed an application. It contends that, as an Israeli entity, it lacked the necessary "minimum contacts" to make it amenable to the jurisdiction of Texas courts.[1] "Minimum contacts" remains the touchstone for deciding whether a state's exercise of personal jurisdiction over a nonresident defendant comports with due process. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. ——, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (plurality opinion). A defendant's delivering of its product into the stream of commerce with the expectation that the product will enter the forum state will ordinarily satisfy the due process requirement of minimum contacts so as to afford that state personal jurisdiction over the defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984); *see also Oswalt v. Scripto, Inc.*, 616 F.2d 191 (5th Cir.1980); *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199 (Tex.1985).

In this case, Ashot's representative testified at the special appearance hearing that he did anticipate that the product might be used anywhere in the United States after being assembled as part of a trailer.[2] Moreover, he admitted that he did not know anything about the contract negotiations between Strick Corporation and Ashot and that he did not even know where the contract was signed.

■ We conclude that Ashot delivered its product into the stream of commerce with a "reasonable expectation" that its product would enter Texas and that Ashot failed to meet its burden of negating all bases of personal jurisdiction. *See Oswalt*, 616 F.2d at 201; *Kawasaki Steel*, 699 S.W. 2d at 203. Therefore, Ashot Ashkelon is amenable to the jurisdiction of Texas courts for the purposes of this lawsuit.

We have also considered the other points of error presented in Ashot's application and conclude that they are without merit. We reverse the judgment of the court of appeals and affirm that of the trial court.

PHILLIPS, C.J., joined by WALLACE, J., dissent with opinion.

GONZALEZ, J., dissents with opinion.

CULVER, J., not sitting.

---

1. The "minimum contacts" question is the only aspect of *in personam* jurisdiction that we are called upon to consider in this case.

2. This testimony is indicative of the difference between the facts of this case and the facts of the *Asahi Metal* case. Asahi was a Japanese corporation which sold tire valves to a Taiwanese manufacturer. The valves were used as components in tire tubes which were sold to California distributors. Not only did Asahi not sell its product directly into the United States but its representative testified that Asahi had "never contemplated that its limited sales of tire valves to Cheng Shin in Taiwan would subject it to lawsuits in California." *Asahi Metal Industry*, 480 U.S. at ——, 107 S.Ct. at 1030, 94 L.Ed.2d at 101.

## ON MOTION FOR REHEARING

PHILLIPS, Chief Justice, dissenting.

My concurring opinion of February 10, 1988, is withdrawn, and the following dissenting opinion is substituted.

By holding that Keen's admitted negligence is irrelevant merely because he "had no knowledge of the dangerous condition that caused the accident," the majority comes perilously close to requiring a defendant to prove assumption of the risk in order for plaintiff's conduct to be considered. Such an approach violates the language and spirit of *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984); *cf. First International Bank v. Roper Corp.*, 686 S.W.2d 602, 603 (Tex 1985). Under *Duncan*, I believe that Keen's negligent conduct was more than a mere failure to discover or guard against a product defect. Therefore such conduct was properly considered by the finder of fact, and the judgment of the court of appeals should be affirmed.

Regardless of the result we reach in this case, however, I would change the law prospectively in one fundamental respect. I would abandon any further reliance on the outmoded concepts of comment n of Section 402A of the Restatement (Second) of Torts. Much confusion and uncertainty results when the fact finder is not permitted to consider a negligent plaintiff's failure to discover or guard against a product defect. I find little, if any, social utility to justify the effort. I would henceforth adopt a system of pure comparative causation, which would allow the trier of fact to consider all negligent conduct by all parties in apportioning responsibility.

## FAILURE TO DISCOVER OR GUARD AGAINST PRODUCT DEFECT

Even under current law, I would hold that the harm caused by Keen's conduct was properly comparable with the harm caused by the defective product of Ashot Ashkelon. *Duncan*, 665 S.W.2d at 427. I disagree that this comparison was foreclosed by this court's reaffirmation of comment n in *Duncan*.

Comment n of Section 402A the Restatement (Second) of Torts provides:

> Contributory negligence of the plaintiff is not a defense when such negligence consists *merely* in a failure to discover the defect in a product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

(Emphasis added). This comment identifies only two types of contributory negligence: (1) a mere failure to discover or guard against a product defect, and (2) assumption of the risk. Under this polarized scheme for labeling a plaintiff's negligent conduct, contributory negligence in the "mere failure" category in no way reduces recovery, while conduct in the "assumption of the risk" category operates as a total bar. Using this analysis, it is little wonder that courts labored mightily to fit an injured plaintiff's conduct within the former category. *Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779 (Tex.1967), and *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967), are representative of cases decided under this anachronistic, all-or-nothing approach.

*Duncan v. Cessna*, however, presented a factual setting which did not fit neatly into either of the available categories of comment n. None of the parties contended that pilot Smithson was aware of the design and manufacturing defects in the legs of the cockpit seat, yet Cessna, a strictly liable manufacturer, sought contribution from Smithson's estate on the theory that his negligence as a pilot caused the fatal crash. *Duncan*, 665 S.W.2d at 418. Because those facts presented a third category of contributory negligence, we framed the question for decision as follows:

whether a plaintiff's contributory negligence is a defense in strict liability actions when that negligence does not rise to the level of assumed risk or unforeseeable product misuse, but is more than a mere failure to discover a product defect. . . .

*Id.* at 422. Although this comparison was never made in a new trial because Cessna failed to preserve error, it is clear that waiver, and not the retention of comment n, was responsible for Cessna's loss. *Id.* at 434. And even though comment n was expressly reaffirmed, we held as follows:

> [T]he system we adopt will allow comparison of plaintiff's conduct, whether it is characterized as assumption of risk, misuse, or failure to mitigate or avoid damages, with the conduct or product of a defendant. . . . Assumption of risk and misuse will no longer be separate defenses, but will be subsumed under the more familiar notion of contributory negligence.

*Id.* at 428.

*Duncan,* therefore, implicitly recognizes a middle category of plaintiff conduct not previously provided for in comment n: contributory negligence without regard to discovery of a product defect. This case fits squarely within this category.

The jury found that Keen was contributorily negligent in moving his hostling tractor beside the trailer-chassis combination. The majority concedes that Keen knew of the risk that trailers might fall and that he violated a recognized safety rule not to pull alongside a trailer in motion or one in the disengagement process. The jury was instructed to "not consider any conduct of the plaintiff which amounts only to a failure to discover or guard against a product defect, if any." As in *Duncan,* evidence of contributory negligence (here the safety rule violation) exists even though Keen had no knowledge of the product defect. But contrary to *Duncan,* comparison is not allowed. The majority has thus expanded the scope of comment n beyond that envisioned by *Duncan* and has retreated to a method of apportioning fault that predates

our current comparative concepts. Under *Duncan,* the majority has erred.

## PURE COMPARATIVE CAUSATION

I would, however, overrule that part of *Duncan* that reaffirms the viability of comment n. A relic from the pre-comparative fault era, it unduly complicates our law without sufficient corresponding benefit.

Comment n was promulgated in 1965, before the advent of comparative principles in either negligence or strict products liability cases. In the emerging doctrine of strict liability, the drafters of the Restatement (Second) of Torts wisely attempted to avoid the unjust effects of the all-or-nothing concepts of contributory negligence by providing that only extreme forms of behavior would bar recovery under the new theory. The drafters thus drew a sharp distinction between aggravated behavior, i.e., assumption of the risk, which would prevent any recovery by a plaintiff, and all other unreasonable behavior, which would not. But the distinction was rooted more in fairness than in logic. As one recognized treatise states:

> Perhaps if comparative negligence had preceded the development of strict liability, contributory negligence would have been recognized as a defense that would diminish recovery in proportion to the percentage of the plaintiff's fault. But courts were operating under the all-or-nothing doctrines of common law.

W. Prosser & P. Keeton, THE LAW OF TORTS 712 (5th ed. 1984).

In *Duncan,* this court joined a growing number of states in sweeping aside generations of convoluted legal precedent and adopting a system of comparative causation for product liability cases in which at least one defendant is found liable on a theory other than negligence. The all-or-nothing concepts of contributory negligence and assumption of risk were abandoned in an effort to create a less confusing and more efficient system of loss allocation. Out of a desire to "protect consumer reliance on product safety", however, we did reaffirm the rule of comment n that

"negligent failure to discover or guard against a product defect is not a defense." *Duncan v. Cessna*, 665 S.W.2d at 432. I believe that even this limited adherence to the old approach was a mistake.

The unfortunate truth is that everyday situations sometimes defy textbook classifications. This case is an excellent example of the difficulties that judges can and do encounter in deciding how to label particular conduct. Yet our choice of that label results in a substantial difference in the amount of the judgment. I suggest that finders of fact, with the best opportunity to consider all the facts and circumstances, should be allowed to analyze the relative contribution of the respective parties' conduct to the plaintiff's injuries. Under the broad form submission now mandated by our rules, the fairest results will be obtained by letting the finder of fact decide to what degree, if any, the plaintiff's own negligence has contributed to his injury. In short, I would hold that all of plaintiff's conduct which contributes to his injury should be compared to the defendant's liability, irrespective of the labels attached to that conduct. *See generally*, Comment, *Duncan v. Cessna Aircraft Company: "Sooner or Later" Is Now*, 36 Baylor L.Rev. 429, 463–65 (1984).

I am persuaded by the reasoning of the California Supreme Court in *Daly v. General Motors Corp.*, 20 Cal.3d 725, 144 Cal. Rptr. 380, 575 P.2d 1162 (1978). In adopting pure comparative causation, the court said:

> Plaintiffs will continue to be relieved of proving that the manufacturer or distributor was negligent in the production, design, or dissemination of the article in question. Defendant's liability for injuries caused by a defective product remains strict. The principle of protecting the defenseless is likewise preserved, for plaintiff's recovery will be reduced only to the extent that his own lack of reasonable care contributed to his injury. The cost of compensating the victim of a defective product, albeit proportionately reduced, remains on defendant manufacturer, and will, through him, be "spread among society." However, we do not permit plaintiff's own conduct relative to the product to escape unexamined, and as to that share of plaintiff's damages which flows from his own fault we discern no reason of policy why it should ... be borne by others. Such a result would directly contravene the principle ... that loss should be assessed equitably in proportion to fault.

20 Cal.3d at 736–37, 144 Cal.Rptr. at 386–87, 575 P.2d at 1168–69.

The "failure to discover or guard against a product defect" rule which today's dissent recognizes and today's majority expands is an anachronism. The continued retention of a rule which allows a plaintiff to recover full damages, even though concededly at fault, is inconsistent with comparative fault principles. Such a rule is unfair and inequitable in its operation because it places the entire burden of loss on one party when, in truth, two parties are at fault. As the court stated in *Pan–Alaska Fisheries, Inc. v. Marine Const. & Design Co., Inc.*, 565 F.2d 1129, 1139–40 (9th Cir. 1977): "[T]here is no reason why other consumers and society in general should bear that portion of the burden attributable to the plaintiff's own blameworthy conduct." *Id.* at 1140.

In the instant case, all parties operated under the holding in *Duncan v. Cessna*. What should be a question of fact, therefore, is in this case a question of law. As discussed above, I believe that Keen's conduct exceeds a mere negligent failure to discover or guard against a product defect. Hence, I dissent from the majority's result. I suggest, however, that in the future we discard comment n completely and adopt a pure form of comparative causation for products liability cases in which at least one defendant is found liable on a theory other than negligence.

WALLACE, J., joins in this dissent.

GONZALEZ, Justice, dissenting.

My opinion delivered on February 10, 1988 is withdrawn and the following is substituted.

The majority opinion is inconsistent with *Duncan v. Cessna,* 665 S.W.2d 414 (Tex. 1984), comment n of § 402A of the Restatement (Second) of Torts, and denies respondents their right to a trial by jury.

I believe that Keen's negligence was more than a mere failure to discover or guard against a product defect. Since there is some evidence to support the jury verdict, the court of appeals correctly reduced Keen's recovery in accordance with the jury's findings on contributory negligence. I would affirm the judgment of the court of appeals.

In *Duncan,* this court created a common law scheme of comparative causation for product liability cases in which one defendant is found liable on a theory other than negligence. Realizing the need for a comprehensive system for loss allocation in order to eradicate the confusion, unmanageability and inherent unfairness pervading Texas products law, the court adopted a system which:

> will allow comparison of plaintiff's conduct, whether it is characterized as assumption of risk, misuse, or failure to mitigate or avoid damages, with the conduct or product of a defendant.... Assumption of risk and misuse will no longer be separate defenses, but will be subsumed under the more familiar notion of contributory negligence.

*Id.* at 428.

In addition, *Duncan* reaffirmed our prior adherence to that part of comment n of § 402A of the Restatement (Second) of Torts which provides that the contributory negligence of the plaintiff in failing to discover a defect, or to guard against the possibility of its existence, is not a defense. *Id.* at 432; *Shamrock Fuel & Oil Sales Co. v. Tunks,* 416 S.W.2d 779 (Tex.1967); *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967). Strong public policy reasons dictate that we continue to reject suggestions that we abandon comment n altogether in fashioning comparative causation schemes. As one court stated, "to penalize a consumer for failing to discover defects or to guard against them places a

burden on consumers which strict liability was intended to remove." *Star Furniture Co. v. Pulaski Furniture Co.,* 297 S.E.2d 854, 862–63 (W.Va.1981). Thus, I advocate the continued adherence to comment n. However, it is unfair for the majority to ignore the jury finding that Keen's conduct fell below that of a person using ordinary care. This is a violation of respondent's rights to trial by jury guaranteed by article 1, section 15 and article 5, section 10 of the Texas Constitution and the seventh amendment to the U.S. Constitution.

In the instant case, the jury found in Issue 7 that "Keen moved his hostling tractor beside the trailer-chassis combination when it would not have appeared to a person using ordinary care that such movement could be made with safety." The jury also found that Keen's negligence was a proximate cause of the occurrence and that Keen's conduct contributed fifty percent to his injuries. The jury was instructed to "not consider any conduct of the plaintiff which amounts only to a failure to discover or guard against a product defect, if any." A jury is presumed to have followed the trial court's instructions. *Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,* 642 S.W.2d 160, 167 (Tex.1982). Thus, we have a situation where a jury has found Keen to be negligent for reasons *other than* his mere failure to discover a product defect.

The majority concedes two crucial pieces of undisputed testimony: Keen knew (1) it was very common for trailers to lean, and (2) it was a recognized safety rule not to pull alongside a trailer in motion or in the process of being set down because of the risk that it could fall and cause injury. In violation of this safety rule, Keen pulled his hostler alongside Moody's trailer while Moody was disengaging. Keen's co-worker, Moody, also testified that it was a recognized practice to park behind trailers which were being set down rather than alongside them.

A review of two prior Texas cases illustrates the application of the "failure to discover" rule. In *Shamrock Fuel & Oil*

*Sales Co. v. Tunks*, 416 S.W.2d 779 (Tex. 1967), the jury found a plaintiff contributorily negligent in causing an explosion by directing his brother to pour kerosene adulterated with gasoline upon a smoldering stick. This court set aside that finding because it embraced a mere failure to discover a defect or guard against the possibility of its existence. *Shamrock*, 416 S.W. 2d at 785. In *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex.1967), the jury found that a reasonably prudent beauty operator in the exercise of ordinary care would have known that the defendant's wave lotion should not be applied to bleached hair. Determining that Mrs. McKisson was at most negligent in not discovering that the product was unsuitable for bleached hair, this court refused to allow such conduct as a defense. *McKisson*, 416 S.W.2d at 793.

In neither case do we have evidence that the injured plaintiff *knew* that he or she was taking a risk by engaging in such conduct. Rather, the evidence showed that a reasonably prudent person *should have known* that the conduct might cause harm. A consumer's "unobservant, inattentive, ignorant, or awkward failure to discover or guard against a defect should not be compared as a damage-reducing factor." *Coney v. J.L.G. Industries, Inc.*, 97 Ill.2d 104, 73 Ill.Dec. 337, 454 N.E.2d 197, 204 (1983). In *Shamrock*, the plaintiff might have avoided injury had he tested the kerosene or discovered its dangerously low flash point. *Shamrock*, 416 S.W.2d at 784. The fact remains, however, that the plaintiff's conduct amounted to no more than a failure to acquire knowledge of a danger which a prudent person would have obtained. In *McKisson*, the plaintiff used a hair lotion which contained a label "for normal or resistant hair...." Although she knew her hair was bleached, Mrs. McKisson nonetheless testified she considered her hair to be normal, not resistant. Further, she testified that although she knew a different formula was ordinarily used for bleached hair, she believed that most preparations which were unsuitable for bleached hair contained warnings to

that effect. *McKisson*, 416 S.W.2d at 791. Once again, the plaintiff should have known that what she was doing was dangerous, but she did not. No evidence was presented in either case of a pre-accident warning or rule not to use the product in a certain manner.

In the instant case, Keen himself testified he knew about a safety rule not to pull alongside a trailer because of the risk it could fall and cause injury. In disregard of this safety rule, Keen pulled alongside the trailer and was injured. From this evidence, the jury could have found that Keen moved his hostling tractor alongside the trailer-chassis combination when an ordinarily prudent person in the same circumstances would not have done so. It matters not that the cause of the accident was due to a defective sandshoe rather than an improperly balanced load, a windstorm, or some other type of occurrence which caused the trailer to fall. *The issue is not what caused the trailer to fall, but what caused the injury to Keen.*

A plaintiff's recovery should not be increased or diminished by reason of the nature of the defect. Rather, the plaintiff's recovery should be calculated by comparing the injured plaintiff's knowledge of a potential risk versus the liability of the defendant for its defective product. Thus, while the accident was caused by a defective sandshoe, the *injury* was caused by a product defect *and* a contributorily negligent plaintiff who knew better than to approach the trailer in the manner in which he did. As we stated in *Duncan:*

Comparative causation is especially appropriate in crashworthiness cases where the product defect causes or enhances *injuries* but does not cause the accident. The conduct which actually causes the accident, on the other hand, would not cause the same degree of harm if there were no product defect. Rather, it is a combination of factors that causes plaintiff's *injuries*. The jury is asked to apportion responsibility between all whose action or products combined to cause the entirety of the plaintiff's *injuries*. (emphasis added)

Duncan, 665 S.W.2d at 428. We also stated:

> The trier of fact is to compare the harm caused by the defective product with the harm caused by ... the plaintiff.

*Id.* at 427. Moreover, the comparative apportionment issue is phrased in terms of the percentage of plaintiff's *injuries.* Id. at 427 n. 8.[1] Because Keen's own undisputed testimony reveals that he *knew* of the risk he was taking by pulling his hostler beside the trailer, *Shamrock* and *McKisson* are inapposite.

Comment n of § 402A of the Restatement (Second) of Torts states:

> Contributory negligence of the plaintiff is not a defense when such negligence consists *merely* in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery. (emphasis added).

The court in *Duncan* focused on the question of:

> "whether a plaintiff's contributory negligence is a defense in strict products liability actions when that negligence *does not rise to the level of assumed risk* or unforeseeable product misuse, *but is more than a mere failure to discover a product defect....*"

*Duncan,* 665 S.W.2d at 422 (emphasis added). Thus, it is clear that our court in *Duncan* recognized a middle category of plaintiff's conduct that is neither assumed risk nor a mere failure to guard against a product defect.

In *Duncan,* the pilot of the airplane was negligent in the manner in which he flew the plane, but he had no knowledge of the defect in the plane's construction. Yet the court plainly suggested that the pilot's contributory negligence would have been a comparative defense. Is it the majority's intent, without taking any notice of this matter, to reverse *Duncan?* Henceforth, will we require that an injured plaintiff have knowledge of the defect before his own negligent conduct will constitute a comparative defense?

Professor William Powers, Jr., in an amicus brief filed on motion for rehearing, presents the following illustration regarding *Duncan* and comment n. There are three categories of contributory negligence recognized in *Duncan.*

| Category I | Category II | Category III |
|---|---|---|
| Plaintiff is negligent *only* because he fails to discover or guard against the defect. | Plaintiff does not know of a defect, but is negligent without regard to the defect. | Plaintiff is actually aware of the defect (assumption of risk). |

Keen's conduct falls into the second category. By failing to recognize this category of conduct, the majority has ignored *Duncan* and comment n, and has created uncertainty and confusion about the continued validity of the court's writing in *Duncan.* Furthermore, by disregarding the jury findings, the court has denied respondents their right to a trial by jury.

1. In framing this issue in terms of "injury," we specifically noted analogous special issues from maritime seaworthiness cases. *Duncan,* 665 S.W.2d at 427 n. 8 (citing *Daly v. General Motors Corp.,* 20 Cal.3d 725, 144 Cal.Rptr. 380, 575 P.2d 1162 (1978)). Both in the area of federal maritime law, and in California's apportionment scheme for strict products liability, the jury is asked to consider the extent to which a plaintiff's own negligence contributes to his injuries. *See Daly,* 575 P.2d at 1168–70.

I would hold that the jury's finding of contributory negligence has some evidence to support it. Since the majority incorrectly determines that Keen's negligence is no defense to this products liability action, I dissent.