**MOONEY AIRCRAFT CORPORATION, Appellant,**

v.

**Bonnie ALTMAN, et al., Appellees.**

**No. 05–88–01175–CV.**

Court of Appeals of Texas, Dallas.

May 26, 1989.

Rehearing Denied June 30, 1989.

Michael W. Huddleston, Robert A. Gwinn, Dallas, for appellant.

Richard N. Countiss, Rita M. Swanson, Dallas, for appellees.

Before McCLUNG, BAKER and ROWE, JJ.

BAKER, Justice.

Mooney Aircraft Corporation appeals from an adverse judgment in a products liability suit concerning the crash of a private airplane. Mooney raises five points of error. In its second point, it contends that the trial court erred by submitting two improperly phrased questions to the jury. We sustain this point and reverse and remand this cause for a new trial.

On February 2, 1982, Lawrence Altman came to Kerrville, Texas, where he took delivery of a new Mooney Model M20J airplane. Altman flew the plane from Kerrville to Phoenix, Arizona. After servicing the plane, he took off for Las Vegas, Neva-da, and crashed a few minutes later. Altman died in the crash. The Altman family and estate sued Mooney to recover damages resulting from Altman's death.

The first question submitted to the jury asked, "If you find the vacuum pump on the aircraft was defective at the time it left the possession of Mooney Aircraft Corporation, was such defect a producing cause of the occurrence in question?" The jury answered, "Yes." The third question asked, "If you find that the Mooney Aircraft Corporation made false representations to the public that the aircraft was airworthy, did the representation about the airworthiness of the aircraft involve a material fact concerning the character or quality of the aircraft in question which was relied on by Lawrence Stuart Altman?" The jury answered, "Yes."

Mooney objected to question number one because of the wording "[i]f you find the vacuum pump on the aircraft was defective at the time it left the possession of Mooney Aircraft Corporation,...." Mooney argued that this clause instructed the jury to make a finding of defective product and that it commented on the weight of the evidence. Mooney objected to question number three because of the wording "[i]f you find that the Mooney Aircraft Corporation made false representations to the public that the aircraft was airworthy...." Mooney contended that this phrase instructed the jury to make such a finding and that it commented on the weight of the evidence. Mooney also argued that because of the wording, the jury would be unable to answer either question unless it made the findings contained in each introductory "if" clause.

■ The alleged defect of the vacuum pump and the alleged misrepresentations about airworthiness were disputed and material factual issues. The trial court shall not in its charge comment directly on the weight of the evidence. TEX.R.CIV.P. 277. Therefore, jury questions should be worded so as to avoid assuming the truth of material controverted facts. *Alvarez v. Missouri–Kansas–Texas R.R.*, 683 S.W.2d 375,

377 (Tex.1984). However, a comment on the weight of the evidence does not constitute reversible error unless it probably caused rendition of an improper judgment. *Alvarez,* 683 S.W.2d at 377; *see* TEX.R. APP.P. 81(b)(1). The form of questions submitted to the jury is largely within the trial court's discretion, but such discretion is limited by the requirement that neither party should be prejudiced. *See Wright v. Traders & Gen. Ins. Co.,* 132 Tex. 172, 123 S.W.2d 314, 317 (Tex.Comm'n App.1939, opinion adopted).

■ Mooney argues that the questions directly commented on the weight of the evidence and assumed the truth of material controverted facts. Mooney contends that the questions produced an ambiguous jury verdict. Mooney notes that the word "if" was used in both questions as a conjunction. As a conjunction, "if" means, among other things, "supposing" or "allowing, conceding, or granting that." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1124 (1981). "Supposing" means "on the assumption that." *Id.* at 2298. Therefore, Mooney contends that use of the term "if" in an introductory clause does not ask a question; instead, it assumes the existence of contested facts. Mooney stresses that it does not object to broad-form submission generally; it objects to the particular method of broad-form submission using the word "if."

The Altmans argue that the questions were proper broad-form submissions. They contend that the jury was required to find each element in each question before it could answer affirmatively. The Altmans maintain that the questions make no assumptions about disputed facts and indicate no opinions of the trial judge about the facts. *See Armes v. Campbell,* 603 S.W.2d 249, 251 (Tex.Civ.App.—El Paso 1980, writ ref'd n.r.e.). The Altmans also suggest that the questions are proper because of the jury charge's instruction that "[i]f you do not find that a preponderance of the evidence supports a 'Yes' answer, then answer 'No.'" The Altmans argue that the jury therefore had to find all necessary elements before answering "yes."

We consider this contention of the Altmans first. In determining the validity of an objection that a charge improperly comments on the weight of the evidence, we must examine the charge in its entirety. *Hydro–Line Mfg. Co. v. Pulido,* 674 S.W.2d 382, 388 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). We have examined the whole charge and conclude that the Altmans' argument misses the point. The trial court's instruction that a "no" answer is required if a preponderance of the evidence does not support a "yes" answer becomes irrelevant if the jury is not properly asked about each required element of the Altmans' case. In other words, if the jury believes that it is required to assume the existence of a material contested fact, the quoted instruction does nothing to remedy the situation.

We conclude that there is a reasonable probability that the jury did think that it was required to assume or suppose the existence of the disputed facts contained in the questions' introductory "if" clauses. The questions were phrased so as to lead the jury to believe that it was assumed that the vacuum pump was defective and that Mooney made false representations. The jury was not properly asked to find all essential elements of the Altmans' case. *See Cactus Drilling Co. v. Williams,* 525 S.W.2d 902, 905–07 (Tex.Civ.App.—Amarillo 1975, writ ref'd n.r.e.). There is no avoiding the reasonable probability that the jury interpreted the introductory "if" clauses as "assuming that the vacuum pump was defective" and "assuming that Mooney made false representations." To conclude otherwise would necessitate ignoring the word "if" and its definitions.

The Altmans note that the *Cactus Drilling* case was decided before the present version of rule 277 of the Texas Rules of Civil Procedure was promulgated. The same can be said about any case decided prior to January 1, 1988. The *Cactus Drilling* court acknowledged the propriety of submitting jury questions broadly. *Cactus Drilling,* 525 S.W.2d at 906. There is no indication in the court's opinion that the question in that case was objectionable

merely because it was broad. *Id.* at 905–07. With minor changes, the questions in the present case could have been properly submitted in broad form. For example, one of many proper forms of the first question would be: "At the time that the aircraft left the possession of Mooney Aircraft Corporation, was there a defect in the vacuum pump that was a producing cause of the occurrence in question?"

■ We hold that questions one and three, as submitted, constituted direct comments on the weight of the evidence because they allowed the jury to assume the existence of material contested facts by improper use of the word "if." We also hold that this error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *See Alvarez*, 683 S.W.2d at 377. We sustain Mooney's second point of error, and we reverse the trial court's judgment and remand this cause for a new trial. *See* TEX.R.APP.P. 81(b)(1).

■ Because this cause must be remanded for retrial, we also consider the issues raised by Mooney's first point of error. Mooney contends that the trial court erred by disregarding the jury's finding that Lawrence Altman was contributorily negligent and that such negligence was a proximate cause of the crash. We note that the question answered by the jury arguably suffers from the same kind of defect discussed above. The Altmans successfully argued to the trial court that all of the evidence of Lawrence Altman's alleged contributory negligence constituted nothing more than evidence of failure to guard against a defect in the product, relying on *Keen v. Ashot Ashkelon, Ltd.*, 748 S.W.2d 91 (Tex.1988). Such a failure is not a defense to strict product liability. *Keen*, 748 S.W.2d at 92. In their post-trial motion, the Altmans contended that Lawrence Altman was merely negligent in a general way. They maintained that such negligence, under *Keen*, is nothing more than a failure to guard against a defect. We think that this interpretation of *Keen* is overly broad. The Altmans' argument also ignores the continued validity and effect of

*Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414 (Tex.1984). In *Duncan*, the Texas Supreme Court adopted a system of pure comparative causation to be applied in product liability cases. 665 S.W.2d at 429. Because the instant case was filed after July 13, 1983, the date when *Duncan*'s causation scheme became effective, and before September 2, 1987, the effective date of an amendment to the Texas Civil Practice and Remedies Code regarding comparative responsibility, *Duncan* applies to this case and will be applicable on remand. *Duncan*, 665 S.W.2d at 434; *see* Act of June 3, 1987, ch. 2, § 4.05, 1987 Tex.Gen. Laws (1st Called Sess.) 37, 40, 51.

One of the questions addressed in *Duncan* was "whether a plaintiff's contributory negligence is a defense in strict products liability actions when that negligence does not rise to the level of assumed risk or unforeseeable product misuse, but is more than a mere failure to discover a product defect." 665 S.W.2d at 422. The supreme court's answer was obviously "yes."

■ The *Duncan* court noted that strict products liability is not absolute liability. The court suggested that it is unfair and economically inefficient to ignore plaintiff misconduct in allocating accident costs. *See Duncan*, 665 S.W.2d at 424–25. Therefore, the trier of fact should compare the harm caused by the defective product with the harm caused by the negligence of the plaintiff. Assumption of risk and misuse are no longer separate defenses, but are subsumed under the more familiar concept of contributory negligence. *See Duncan*, 665 S.W.2d at 427, 428. The only defense specified as unavailable is negligent failure to discover or guard against a product defect. *See Duncan*, 665 S.W.2d at 432.

*Duncan* stands for the proposition that plaintiff misconduct (harm caused by the plaintiff's negligence) is to be compared with the harm caused by the defective product. *See Duncan*, 665 S.W.2d at 425, 427. Available defenses are subsumed under the familiar notion of contributory negligence. These defenses include assumption of risk, misuse, and negligence that does not rise to the level of assumed risk or

unforeseeable product misuse but is more than a *mere* failure to discover a product defect. *See Duncan,* 665 S.W.2d at 422, 428 (emphasis added); *cf. First Int'l Bank v. Roper Corp.,* 686 S.W.2d 602, 603 (Tex. 1985). Misuse (and presumably assumed risk) are no longer separate defenses but have been prospectively replaced with the doctrine of comparative causation. *See Placencio v. Allied Indus. Int'l, Inc.,* 724 S.W.2d 20, 21 n. 1 (Tex.1987); *EMW Mfg. Co. v. Lemons,* 741 S.W.2d 212, 219 (Tex. App.—Fort Worth 1987), *rev'd on other grounds,* 747 S.W.2d 372 (Tex.1988).

■ In our view, *Keen* does not overrule these teachings of *Duncan* and its progeny. In *Keen,* the question before the supreme court concerned the nature of the plaintiff's negligent conduct. Because the supreme court determined that the plaintiff's negligence was a failure to guard against a defective product, the court affirmed the trial court's judgment disregarding the jury's contributory negligence findings. *See Keen,* 748 S.W.2d at 92, 93. Therefore, determining the propriety of the trial court's action in the instant case involves determining the nature of Altman's alleged negligent conduct. If that conduct was more than a mere failure to discover or guard against a product defect, the trial court erred in disregarding the jury's finding of contributory negligence. *See Keen,* 748 S.W.2d at 92, 93; *Duncan,* 665 S.W.2d at 422, 427–28. We note that the jury question on contributory negligence should have been accompanied by a limiting instruction. *See Keen,* 748 S.W.2d at 97 (Gonzalez, J., dissenting).

■ A trial court may disregard a jury finding only when there is no evidence to support the finding. When making this determination, the trial court must consider the evidence in the light most favorable to the finding, considering only the evidence and inferences which support the finding and rejecting all contrary evidence and inferences. *See* TEX.R.CIV.P. 301; *Campbell v. Northwestern Nat'l Life Ins. Co.,* 573 S.W.2d 496, 497 (Tex.1978). This same standard is applied upon appellate review of the trial court's action. *See Johnston Sales Co. v. Lizana,* 513 S.W.2d 879, 881 (Tex.Civ.App.—Waco 1974, writ ref'd n.r.

e.). Applying the proper standard ensures that the right of trial by jury shall remain inviolate. *See Texas Farmers Ins. Co. v. McGuire,* 744 S.W.2d 601, 603 (Tex.1988).

When we examine the evidence of Altman's contributory negligence, we find that David Stewart, an expert witness, testified that Altman was negligent as a pilot by not taking a "familiarization check ride" in the airplane. He said that this omission was not advisable or safe. A Mooney Operator's Manual was admitted into evidence. Stewart expressed his opinion that Altman had not complied with safety procedures set forth in the manual. He stated his opinion that Altman had violated the rule against flying when physically or mentally exhausted. Stewart also expressed his opinion that pilot error could have been a contributing factor in causing the crash.

Frederick Wilken also testified as an expert witness by means of a videotaped deposition. He stated that a normal prudent noninstrument-rated pilot in Altman's circumstances should have rested overnight before flying from Kerrville. He should have taken a checkout ride, and he should not have continued the flight as long as Altman did. Wilken testified that even if the vacuum pump failed, other instruments would have been available to aid the pilot in keeping the aircraft flying. Wilkin stated that he did not think that the accident would have occurred if Altman had not attempted the flight from Phoenix in the dark of night when he was not an instrument-rated pilot and had been awake for twenty hours or more.

Thomas Smith testified as an expert. He expressed his opinion that the actions of Altman were not those of a reasonably prudent pilot. He identified the imprudent actions as making a night departure in an aircraft that he had not flown before after having been awake for twenty or more hours and being subject to fatigue. Smith felt that Altman would have been extremely fatigued and would have suffered from lack of judgment and impaired muscular reactions. He said that Altman was imprudent by attempting a flight in a dark area when he was not instrument-qualified. Smith characterized these acts as negligence if negligence is defined as the failure

to exercise ordinary care. He expressed his opinion that all of these negligent acts contributed to the cause of the accident.

We conclude that there was much more than a scintilla of evidence and inferences that Lawrence Altman was contributorily negligent. We also conclude that this evidence amounts to more than a failure to discover or guard against a product defect. *See Duncan,* 665 S.W.2d at 422, 423, 427–28. For example, we do not regard the failure to undertake a check ride as a failure to guard against a defect. Flying when mentally or physically fatigued is not such a failure. The failure to comply with safety procedures, in the context of this case, is not a failure to discover or guard against a product defect. Our review of the evidence and inferences of contributory negligence has not been exhaustive, but it clearly demonstrates that there was evidence supporting the jury's finding. Therefore, the trial court should not have disregarded the jury's finding that Altman was contributorily negligent. *See* TEX.R.CIV.P. 301; *Campbell,* 573 S.W.2d at 497.

We sustain Mooney's second point of error. We reverse the trial court's judgment and remand this cause for a new trial to be conducted in accordance with this opinion.