937 F.2d 197
 33 Fed. R. Evid. Serv. 952, Prod.Liab.Rep.(CCH)P 12,953
Doyle BRADSHAW, Plaintiff-Appellee Cross-Appellant,
v.
FREIGHTLINER CORPORATION and National Seating Company,
Defendants-Appellants Cross-Appellees.
 No. 90-4588.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 2, 1991.
Rehearing Denied Aug. 29, 1991.
 
 Roy Antley and Eugene M. Nettles, Scott, Douglass & Luton, Houston, Tex., for Nat. Seating.
 Elizabeth B. Pratt and John D. Rienstra, Jr., Mehaffy & Webber, Beaumont, Tex., for Freightliner.
 Donald Francis Lighty and Virginia P. Fawcett, Benckenstein, Norvell, Bernsen & Nathan, Beaumont, Tex., for intervenor-CIGNA.
 Dale K. Hanks and William E. Townsley, Townsley, Hanks & Townsley, Beaumont, Tex., for Doyle Bradshaw.
 Richard L. Scheer and William B. Coffey, Jr., Strong, Pipkin, Nelson & Bissell, Beaumont, Tex., for Goodyear Tire.
 Appeals from the United States District Court for the Eastern District of Texas.
 Before GARZA, HIGGINBOTHAM and DAVIS, Circuit Judges.
 REYNALDO G. GARZA, Circuit Judge:
 
 
 1
 National Seating appeals claiming the district judge erred in various respects concerning the jury instructions, the admission of hearsay testimony and other miscellaneous points. Bradshaw cross-appeals arguing the judge should have granted his motion to alter or amend judgment on the basis of Keen v. Ashot Ashkelon, Ltd., 748 S.W.2d 91 (Tex.1988). Finding no reversible error presented by either side, we AFFIRM the judgment of the district court.
 
 FACTS AND PRIOR PROCEEDINGS
 
 2
 Doyle Bradshaw worked as a truck driver for Builders Transport, a trucking company. The truck he drove was a 1984 "cab over tractor," which Builders Transport had purchased new from the Freightliner Corporation, the truck's manufacturer. When it bought the truck, Builder's Transport also requested that the rig be equipped with Cush-N-Aire model-195 and model-95 seats for the driver's side and passenger's side, respectively. National Seating is the manufacturer of those seats. This type of seat contains a shock absorber and an air bag, which is connected to the air-supply system of the tractor. The driver can raise or lower the seat by manipulating a valve that controls the flow of air into the seat.
 
 
 3
 In November of 1987, while driving the truck in Virginia, Bradshaw hit a bump in the road that threw him several inches out of his seat. When he came down, the seat collapsed. He testified that he did not recall whether he was wearing his seat belt at the time. Also, before the accident, he had been having some problems with the seat's valve leaking. The next day, Bradshaw took the truck to have it repaired. He testified that an unnamed mechanic replaced the air bag in the collapsed seat and gave the old air bag to him to inspect. Bradshaw testified that the old air bag had a small "rubbed spot" on it, in the middle of which was a hole about the size of a dime. Also, Doug Hughes, the owner of the truck repair shop where the air bag was replaced, testified he overheard the mechanic who replaced the air bag say that there was a hole in it. The truck in question was later involved in an unrelated accident that completely destroyed the cab, including the seats. Thus, the collapsed seat was not available to the parties for testing.
 
 
 4
 Shortly following the alleged collapse of the air bag, Bradshaw began having back and leg pain as well as numbness. By November 24, 1987, he was no longer able to work for Builders Transport. He was diagnosed as having two herniated discs, injuries that eventually required extensive medical treatment, including two surgeries.
 
 
 5
 National Seating, the manufacturer of the collapsed seat in this case, had experienced problems with the air bags in their seats similar to the problems described by Bradshaw. In 1983, National Seating received from the field approximately six air bags (or "air springs"), each of which experienced small scuff areas in approximately the same location. When the seats were sent for inspection to Goodyear, the manufacturer of the air bag, it was determined that when the seats were in the fully upright position the shock absorber would rub against the air bag. Goodyear engineers suggested two proposals to eliminate the scuffing problem. National Seating officials gave no indication to Goodyear that it planned to implement either of those proposals. National Seating contends it immediately changed and corrected the design, a change they claim took approximately one-half hour to complete. By April of 1983, National Seating began using exclusively the new design. By May of 1983, the inventory of old design seats was exhausted. Builders Transport ordered the truck containing the seat at issue in December of 1983 at the earliest. Consequently, National Seating contends the seat which must have collapsed was one of the new design seats.
 
 
 6
 The evidence regarding the seat at trial, however, showed the type of damage the air bag suffered, the scuff marks and dime size hole, was just like the damage found in the six air bags returned to National Seating in 1983. Bradshaw testified he saw this damage on the air bag at issue. Further, Hank Fresch, the Goodyear engineer who examined the six National Seating air bags returned in 1983, testified those air bags had the same sort of damage.
 
 
 7
 One of National Seating's contentions at trial was that the failed air bag was improperly installed. Approximately four months before Bradshaw's injury, the driver-seat air bag in Bradshaw's truck was replaced, the old one having failed. Jerome Loftis, a Builders Transport mechanic, testified he replaced the failed air bag, which had been in service for three and one-half years, with the air bag from the passenger's seat. Loftis testified the failed air bag had a "vertical slit" in it, but he mentioned no scuff marks. Loftis also testified he correctly and carefully installed the failed air bag and checked it to assure it functioned properly before Bradshaw took to the road.
 
 
 8
 Seeking recovery for the damages he suffered from the accident, Bradshaw sued Freightliner, National Seating and Goodyear. CIGNA Insurance Company of Texas, the worker compensation carrier for Builders Transport, intervened to recover the benefits it had paid to Bradshaw. At trial, Bradshaw requested issues on strict products liability (design defect and manufacturing defect) as to Freightliner and National Seating; negligence as to National Seating; and strict products liability (manufacturing defect) as to Goodyear. National Seating made a motion for directed verdict during the trial which was overruled by the trial court. The jury found the following: the seat was defective; the Goodyear air bag was not defective; National Seating was negligent; National Seating was 65% responsible and Bradshaw 35% responsible for his injuries; and Bradshaw suffered $377,452.02 in damages. The jury also decided Freightliner was vicariously responsible, because the defect in the seat existed when Freightliner sold the truck containing the seat to Builders Transport.
 
 
 9
 The district court entered final judgment in accordance with the jury findings, reducing the damages awarded Bradshaw by 35% and awarding to CIGNA the amount it had paid out in benefits. Freightliner was also granted full indemnity against National Seating. National Seating and Freightliner filed motions for judgment notwithstanding the verdict or, alternatively, for a new trial, which were denied by the district court. Bradshaw filed a motion to alter or amend the judgment concerning his contributory negligence finding, which the trial court denied. National Seating and Freightliner appeal and Bradshaw cross-appeals.
 
 ISSUES
 The jury instruction on res ipsa loquitur
 
 10
 The trial court has broad discretion in formulating the jury charge. Barton's Disposal Serv., Inc. v. Tiger Corp., 886 F.2d 1430, 1434 (5th Cir.1989). On appeal, the charge must be considered as a whole, and so long as the jury is not misled, prejudiced, or confused, and the charge is comprehensive and fundamentally accurate, it will be deemed adequate and not reversible error. Scheib v. Williams-McWilliams Co., 628 F.2d 509, 511 (5th Cir.1980). We review jury instructions with deference and will only reverse judgment "when the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Treadway v. Societe Anonyme Louis-Dreyfus, 894 F.2d 161, 167-68 (5th Cir.1990) (citation and quotation omitted).
 
 
 11
 The district court charged the jury as follows:
 
 
 12
 Plaintiff also contends that negligence by National Seating can be inferred under the doctrine of res ipsa loquitur. In this respect, the Court instructs you that you may infer negligence by a party if you find, first, that the occurrence is such that it ordinarily would not happen in the absence of negligence. Two, that the instrumentality causing the occurrence was under the management and control of the party at the time the negligence, if any, probably occurred.
 
 
 13
 National Seating claims this instruction was erroneous because res ipsa loquitur does not apply to this case as a matter of law. There was no evidence National Seating had control of the product at the time the accident occurred and there were intervening causes which caused the accident; consequently, the judge erred in his res ipsa loquitur instruction argues National Seating. We disagree.
 
 
 14
 The possibility of other causes does not have to be eliminated, only reduced, so as to allow an inference the negligence, if any, was committed by the defendant. Mobil Chem. Co. v. Bell, 517 S.W.2d 245, 251 (Tex.1974). Bradshaw introduced evidence to the jury showing the tractor seats were well maintained and that the failed air bag was properly installed. In addition, the air bag had markings on it produced by rubbing or scuffing between the shock absorber and the air bag. Previous tests showed this was a possibility with this type of air bag. Also, for res ipsa loquitur to possibly be applicable it is necessary plaintiff show the defendant was in exclusive control of the instrumentality at the time the negligence occurred, not necessarily at the time of the accident which caused the injury. Id. at 251. National Seating designed and manufactured the seat at issue and there was evidence the shock absorber was placed too close to the air bag. This is possibly what caused the air bag to burst. Hence, the negligence occurred when the seat was in the exclusive control of National Seating. The district court properly instructed the jury on res ipsa loquitur under the facts of this case.
 
 The Builder's Transport instruction
 
 15
 The following instruction was given to the jury:
 
 
 16
 [I]n this case, you are not to consider the negligence, if any, of Builder's Transport, Incorporated or any of its employees. In other words, that's--this is not a consideration for you to consider. And even though you should find that the employer of the Plaintiff or some of its employees other than the Plaintiff himself were negligent, this will not prevent the Plaintiff from showing his right of recovery under products liability, defect of the product, and will not prevent him from recovering and you will not consider such negligence. The only negligence you are to consider in this case is that of National Seating Company and Doyle Bradshaw, the Plaintiff, if any.
 
 
 17
 Because of this instruction and the fact the district judge failed to instruct the jury on sole proximate cause, National Seating argues they were denied the opportunity for the jury to find the seat was improperly installed by Builder's Transport, the plaintiff's employer. Again, we disagree.
 
 
 18
 The district judge plainly instructed the jury in his charge "not to single out any one instruction alone as stating the law but you must consider the instructions as a whole." The charge informed the jury that in order for Bradshaw to recover, the product defect or negligence had to be a producing or proximate cause of the occurrence. The charge made it clear National Seating had to have caused the occurrence otherwise Bradshaw could not recover. The sole cause instruction was not submitted because it was encompassed within the other instructions in the charge.
 
 
 19
 As for the fact the negligence of Builder's Transport was not to be considered by the jury, this instruction was right on point with the dictate of the Texas Supreme Court in Varela v. American Petrofina Co. of Tex., Inc., 658 S.W.2d 561, 562 (Tex.1983). Varela held that an employer's negligence could not be considered in a third-party negligence action for the purpose of reducing the employee's damages. In trying to distinguish Varela, National Seating cites Williams v. Union Carbide Corp., 734 S.W.2d 699, 702 (Tex.App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.), for the proposition that Varela does not preclude the jury from considering the employer's negligence. The problem, however, is that Varela, from the Texas Supreme Court, is directly applicable and controls over any analogous Texas Court of Appeals decision. Moreover, the evidence of the employer's negligence was admitted at trial and even though the jury was instructed not to consider this in their deliberations, this seems to conform to the teachings of Williams. We note the law in Texas concerning Varela is not clear and there is conflict among the Texas Courts of Appeal. See W.B. Hinton Drilling Co. v. Zuniga, 784 S.W.2d 442, 450 (Tex.App.--Tyler 1989, writ requested) (urging the Texas Supreme Court to reconsider or explain the scope of Varela). Until further pronouncement from the Texas Supreme Court, Varela controls. The district judge should have followed Varela and he did, no error occurred.
 
 The manufacturing and design defect issue
 
 20
 National Seating complains of the following question concerning design and manufacturing defect:
 
 
 21
 Do you find from a preponderance of the evidence that plaintiff, Doyle Bradshaw, is entitled to recover against National Seating Company on his claim under the doctrine of strict liability in tort based on a defect in the seat or air bag in question as a producing cause of the occurrence in question?
 
 
 22
 This question according to National Seating may have allowed the jury to apply the wrong test of "unreasonably dangerous" or alternately was erroneous because there was no substantial evidence to support submission on either theory, especially manufacturing defect.
 
 
 23
 As National Seating concedes, the form of the jury charge in a federal diversity case is a matter of federal procedural law. See Turlington v. Phillips Petroleum Co., 795 F.2d 434, 441 (5th Cir.1986) ("the form or manner of [jury] instructions is controlled by federal, not state law"). The judge was within his discretion in submitting the theories of design and manufacturing defect in a single question because federal law, whether procedural or substantive, does not require a different question. Furthermore, any error which may have occurred was harmless under Federal Rule of Civil Procedure 61 because of the jury finding regarding negligence. In Interrogatory Number One the jury answered "Yes" finding both parties, National Seating and Bradshaw, negligent. Consequently, Bradshaw was entitled to recover on that theory of the case.
 
 
 24
 The refusal to instruct the jury regarding substantial
 
 
 25
 change or alteration
 
 
 26
 National Seating complains the trial judge erred in refusing to instruct the jury that under Texas law, a defendant is not liable in a products liability action if an unreasonably dangerous condition results from a substantial change or alteration of the product after it is sold. The problem, however, is there was no substantial evidence the air bag was improperly installed (i.e. the product was altered or changed after sale). The mechanic who installed the air bag testified he installed the bag properly and checked to assure it was properly installed. More importantly, however, is the fact the court instructed the jury that in order for the plaintiff to recover against National Seating under the doctrine of strict liability "it is necessary to find a defect in the seat or air bag existing at the time those products left the possession of the manufacturer, National Seating Company." The jury was told the defect had to exist at the time the seat departed National Seating's control. The "refused" instruction was essentially given and the trial judge committed no error.
 
 
 27
 The instruction similar to res ipsa loquitur
 
 
 28
 In addition to the res ipsa loquitur instruction, the trial judge gave the following instruction:In determining whether the seat and the air bag contained manufacturing defects under the doctrine of strict liability in tort, you're instructed that you may infer a defect. If you find, one, that the character of the occurrence is such that it would ordinarily not happen in the absence of a manufacturing defect; two, that the product causing the occurrence was under the management and control of the manufacturer at the time of the defect, if any, arose.
 
 
 29
 This instruction, National Seating alleges, intermingled the unrelated theories of negligence and strict products liability and allowed the jury to infer a manufacturing defect based solely on the fact the incident occurred. According to National Seating, this was erroneous. Whether erroneous or not we do not decide because if any error occurred, it was harmless. See Fed.R.Civ.P. 61. The jury returned a finding of negligence against National Seating which afforded plaintiff an alternate theory of recovery. No reversible error occurred.
 
 
 30
 The alleged hearsay testimony of Doug Hughes
 
 
 31
 At trial, the district judge allowed Doug Hughes, the owner of Complete Truck Service, to testify over objection that the air bag had a hole in it. This testimony was based solely on the hearsay statement of the mechanic who performed the repair. National Seating contends this was reversible error and "surely played a significant role in the jury's verdict." Accordingly, we should grant a new trial contends National Seating. We think this is wrong and deny a new trial.
 
 
 32
 The complained of testimony was cumulative. There was little question the air bag failed. The invoice from Complete Truck Service was introduced which verified the air bag on the driver's seat was replaced. The Builder's Transport Emergency Order and Breakdown Report showing the air bag on the driver's seat was bad was admitted into evidence at trial. The "infamous statement" only told the jury of a hole in the air bag. This issue was not highly contested. What was highly contested, however, was how the hole formed. National Seating asserts they designed the seat properly and the seat did not cause the hole in the air bag. The jury found otherwise, however. The testimony of Hughes did not enter into the jury verdict. There was no basis to admit the hearsay statement. Nevertheless, the statement was harmless and a new trial is unwarranted. See Fed.R.Evid. 103.
 
 National Seating's Other Points
 
 33
 National Seating also lists the following issues as reasons for reversal: the district court erred in failing to grant National Seating's motion for directed verdict and motion for judgment notwithstanding the verdict; the district court erred in failing to grant National Seating's Motion for New Trial; because there were no separate findings on manufacturing defect and design defect, the district court's erroneous instruction that the jury could infer a manufacturing defect mandates a new trial; and the cumulative effect of the errors mandates a new trial. We have thoroughly studied the record and the briefs and find these listed issues to be without merit. Consequently, all of National Seating's points of error are overruled.
 
 The Cross-Appeal
 
 34
 On cross-appeal Bradshaw contends the district judge erred in failing to grant his motion to alter or amend the final judgment. He bases this contention on Keen v. Ashot Askelon, Ltd., 748 S.W.2d 91 (Tex.1988), in which the Texas Supreme Court decided a plaintiff's negligent conduct will not be a defense in a strict product liability action when the plaintiff fails to discover or guard against the defective product. Bradshaw asserts his negligence was a failure to guard against a product defect and therefore is not a defense to a strict liability in tort claim. Because the jury decided in his favor on the strict liability issue his 35% negligence should have been ignored by the district judge. We disagree.
 
 
 35
 Since Bradshaw did not request the instruction at trial with respect to the failure to guard claim, he is relegated on appeal to arguing the judge erred in failing to grant his motion to alter or amend the judgment. Keen does hold plaintiff's negligent conduct is not a defense in a strict product liability action when the plaintiff fails to discover or guard against the defective product. Id. at 93. See also Note, Plaintiff's Negligent Conduct Will Not be a Defense In a Strict Product Liability Action When Plaintiff Fails to Discover or Guard Against the Defective Product, 20 Tex.Tech L.Rev. 969 (1989) (analyzing the Keen decision). What neither party tells us, however, is that in 1987, the Texas Legislature adopted the Texas Tort Reform which took effect September 2, 1987. Tex.Civ.Prac. & Rem.Code Ann. Secs. 33.001-33.017. This accident occurred in November of 1987 and falls within the effective date of the Texas Tort Reform. Keen was decided under the old law and applied those principles. All of the Keen opinions, applied and discussed the comparative causation principles judicially created in Duncan v. Cessna Aircraft Co., 665 S.W.2d 414 (Tex.1984). While Keen may be the law for causes of action accruing prior to September 2, 1987, the Texas Legislature has spoken for causes accruing after that date and this is one such case.
 
 
 36
 The district judge was correct in his treatment of the comparative causation issues. Section 33.001(b) of the Texas Civil Practice and Remedies Code states: "[i]n an action to recover damages for personal injury ... in which at least one defendant is found liable on the basis of strict tort liability, strict products liability ... a claimant may recover damages only if his percentage of responsibility is less then 60 percent." Section 33.012(a) in turn provides that "[i]f the claimant is not barred from recovery under Section 33.001, the court shall reduce the amount of damages to be recovered by the claimant with respect to a cause of action by a percentage equal to the claimant's percentage of responsibility." This statute says nothing about negligent failures to guard against defective products and we do not read Keen into it. Keen was decided under the old law, that much is clear. This case is decided under the tort reform and Bradshaw's recovery was properly reduced by his negligence.
 
 
 37
 We also add the evidence is sufficient to support the 35% negligence on the part of Bradshaw. The evidence at trial showed he failed to avoid a hole in the road, failed to have the seat repaired after experiencing problems with the seat's valve leaking and might not have been wearing his seat belt. The jury heard and considered all of this. Bradshaw's cross-appeal is overruled.
 
 CONCLUSION
 
 38
 Neither side presents any reversible error. Accordingly, the judgment of the district court is AFFIRMED.