**TRANSAMERICA TITLE INSURANCE COMPANY, Appellant,**

v.

**SAN BENITO BANK AND TRUST COMPANY, Appellee.**

No. 13–87–349–CV.

Court of Appeals of Texas, Corpus Christi.

June 30, 1988.

Rehearing Denied Aug. 31, 1988.

Frank L. Heard, Jr., Michael W. Mengis, Vinson & Elkins, Houston, R.K. Whittington, Stapleton, Whittington, Curtis, Harlingen, for appellant.

Richard D. Schell, Wiley & Fleuriet, Harlingen, Russell H. McMains, McMains & Constant, Corpus Christi, for appellee.

Before SEERDEN, UTTER and BENAVIDES, JJ.

## OPINION

SEERDEN, Justice.

A jury found that Transamerica Title Insurance Co. (Transamerica) breached its contract, was grossly negligent, conspired with a bank to the detriment of its insured, and breached its duty of good faith and fair dealing to its insured in a case involving the title company's negotiation of a claim arising when a bank posted foreclosure of a prior lien which the title company had omitted in its description of the insured's interest. The jury found actual damages of $416,715.48, awarded exemplary damages of $1,800,000.00, and awarded attorney's fees. The trial court added interest and costs and entered judgment against Transamerica. Appellant raises sixteen points of error. We affirm the trial court's judgment.

San Benito Bank & Trust Co. (San Benito) secured a $416,715.48 debt of E.D. Kor-

negay, Inc., which Kornegay also personally guaranteed, by taking a lien on a 278–acre tract of its Cameron County land. In connection with its acquisition of the lien, San Benito bought a $500,000.00 title policy from Transamerica. The title policy, issued on September 15, 1983, showed that San Benito was insuring a second lien, which was junior only to Equitable Life Insurance's (Equitable's) first lien securing a $500,000.00 note.

However, the title policy mistakenly failed to list in its description of San Benito's interest that InterFirst Bank of Harlingen (InterFirst) had previously acquired a second lien on the property, so that San Benito acquired only a third lien on a property subject to greater debt. The error was discovered because InterFirst had posted notice to foreclose on about 750 acres, including the 278–acre tract, to satisfy a debt of some $1,200,000.00.

The title policy gave Transamerica three options in case of a claim. It could:

(a) re-establish the status quo of the Insured by effecting settlement and dismissal of such action or proceeding;

(b) at its own cost and charges pursue such action or proceeding to final determination in the court of last resort and comply with the judgment of the court in behalf of the Insured up to the amount of this policy;

(c) at any time pay the Insured up to the amount of this policy in discharge of all obligations thereunder.

Transamerica did not choose to represent San Benito and pay the actual amount of loss, option (b), or to pay the policy amount, option (c). Its representatives claimed that they chose to re-establish the status quo, option (a).

When San Benito discovered InterFirst's posting of foreclosure, it recognized that its position was endangered. The land did not have enough value to satisfy the indebtedness to Equitable and to InterFirst and still secure the debt to San Benito.

Transamerica hired E.G. "Sandy" Hall, an attorney, on September 23, 1983, as its agent to investigate and negotiate the situation. At one point, Transamerica offered San Benito $100,000 in settlement, which it declined. Hall then attempted to negotiate with InterFirst to obtain a second lien position for San Benito.

Hall testified that he was told that Inter-First was attempting to buy the Equitable first lien note during negotiations to obtain a release on its position on the 278 acres. Hall stated that on either June 25 or June 27, 1984, representatives of InterFirst told him that InterFirst's ability to acquire Equitable's position was a condition of the deal between Transamerica and InterFirst.

On June 28, 1984, Transamerica issued a check for $100,000 as a "claim settlement" to Atlas & Hall. Hall endorsed it to Inter-First in exchange for a partial release, guaranteeing San Benito a second lien. The release was executed on July 2, 1984.

On July 2, 1984, San Benito was put into a second lien position. On July 3, 1984, InterFirst foreclosed on all of the land except for the 278 acres, and purchased the land. On July 6, 1984, San Benito contacted Equitable about the first lien, but was told it was too late. In October, 1984, InterFirst foreclosed The Equitable lien against only the 278 acres, obtaining that land. San Benito's lien position proved worthless; it recovered nothing on its lien, and the title insurance also paid it nothing.

By points one and two, appellant challenges the legal and factual sufficiency of the evidence to support the submission of Special Issue No. 1 and the jury's answer, finding that appellant breached its contract. The Issue asked whether Transamerica committed any breach which proximately caused any damage to San Benito. The jury was instructed that "breach" means the failure, without legal justification, to perform any promise which forms the whole or part of a contract or agreement.

Appellant argues that the issuance of the title policy did not obligate it to act before any loss occurred. Our examination of the record convinces us that the case is about the handling of San Benito's claim, not the mere error in the title description. Contractually, Transamerica did have three op-

tions when the claim arose. However, it is clear that it did not choose to exercise options (b) or (c). Thus the question is whether Transamerica did (a) re-establish the status quo of the insured.

In ruling on a "no evidence" point, we consider only the evidence and inferences supporting the jury's finding and disregard all evidence and inferences to the contrary. *Larson v. Cook Consultants, Inc.*, 690 S.W.2d 567, 568 (Tex.1985); *International Armament Corp. v. King*, 686 S.W.2d 595, 597 (Tex.1985); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If any evidence of probative force supports the jury's finding, we must overrule the point and uphold the finding. *In re King's Estate*, 244 S.W.2d at 661–62. An assertion that the evidence is "insufficient" to support a finding of fact can mean that the supporting evidence is so weak or that the contrary evidence is so overwhelming that we should set it aside and order a new trial. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex. 1965). We consider all of the evidence in ruling on questions of weight and sufficiency. *Lofton v. Texas Brine Corp.*, 720 S.W. 2d 804, 805 (Tex.1986).

■ The record includes testimony of the value of the tracts of land as well as of the indebtedness secured by the 750 acres and the 278 acre tract included within it. There is testimony that there was sufficient equity in the 278 acre tract to secure the debt to San Benito after satisfying the portion of the Equitable debt that would be borne by that acreage. However, the value of the land was insufficient to cover it after satisfying both Equitable's and Interfirst's liens.

While Transamerica's negotiation and payment did result in consolidation of the prior liens and indebtedness against the 278 acres, thus nominally giving San Benito a second lien position, evidence also shows that San Benito's interest never acquired the value it would have had if it were second only to Equitable's lien. The prior indebtedness was not reduced, only consolidated, so that San Benito was powerless to prevent a foreclosure which extin-guished its lien and from which it received nothing.

As to the restoration of the status quo, there was testimony that a second lienholder was normally in a position in which he could offer to buy out the first lienholder. Fred Timberlake, a Transamerica attorney, admitted that the ability to bid for the first lien position was part of the status quo of having a second lien. Yet, the deal between Equitable and InterFirst, of which Transamerica was aware when it bought the release, prevented San Benito from bidding on Equitable's position. Thus, there was evidence that Transamerica did not restore the status quo. We overrule points one and two.

By points seven and eight, appellant contests the legal and factual sufficiency of the evidence to support the submission of Special Issue No. 9 and the jury's answer, finding that Transamerica breached its duty of good faith and fair dealing in handling San Benito's claim.

Appellant asserts that it was not obligated to act before a loss occurred, that San Benito's claim was premature, and that the insured could not create a duty on the part of the insuror to negotiate the settlement of a claim before a loss occurred. It concludes that it could not breach any duty of good faith and fair dealing in negotiating because it had no duty to negotiate.

■ While appellant was not obligated to negotiate, the evidence is undisputed that appellant chose that option for dealing with the claim. Once the insuror began to act in handling a claim, the duty of good faith and fair dealing applied. "[An] indemnity company is held to that degree of care and diligence which a man of ordinary care and prudence would exercise in the management of his own business." *Arnold v. National County Mutual Fire Insurance Co.*, 725 S.W.2d 165, 167 (Tex.1987) *quoting G.A. Stowers Furniture Co. v. American Indemnity Co.*, 15 S.W.2d 544, 548 (Tex.Comm'n.App.1929, holding approved).

We hold this standard applicable. Once Transamerica began to act, it had a duty to protect the interests of its insured. It did purport to settle the claim by its $100,000

check to InterFirst. We examine the evidence under the tests set out previously.

■ Hall, Transamerica's agent, was asked whether he and Transamerica were held to a degree of care and diligence which a man of ordinary care would exercise in the management of his own business. He agreed. Then, when asked if he and Transamerica were to put themselves in the shoes of San Benito and its president in the way they approached the handling of the claim, he replied, "I don't know. We did not do that." He also testified, "If we had a duty to take the position that [San Benito's president] took, if we had that duty, I guess we would have breached it, yes, sir." Hall admitted that he did not know under the policy that he had a duty to do what was in the best interests of the insured.

The agent's failure to assume the duty of good faith and fair dealing toward San Benito is demonstrated by his acts. Having calculated that the value of its insured's claim was $130,000, Hall offered the insured $100,000 in settlement. The insured declined, and never received another offer. Instead, Hall dealt with the other lienholders, ultimately paying San Benito's competitor, InterFirst, $100,000 for a release which proved valueless to San Benito. Part of the deal, not disclosed to San Benito, assured InterFirst the first lien position and control to extinguish San Benito's interest. Hall's testimony is sufficient evidence to sustain Special Issue No. 9. We overrule points eight and nine.

Appellant's points twelve through fifteen attack the award of exemplary damages. Point thirteen argues that the evidence is insufficient to support submission of an exemplary damage issue. Point fourteen alleges that the evidence was factually insufficient to support the jury's finding, or, alternatively, that the finding was against the great weight and preponderance of the evidence.

■ Appellant first argues that any damage in the case is contractual in nature and thus will not support exemplary damages. Having held that the duty of good faith and fair dealing applied in this case, and having sustained the jury's finding that the duty was breached, we must disagree. As *Arnold* points out, 725 S.W.2d at 168, breach of the duty of good faith and fair dealing is a tort for which exemplary damages are recoverable. *See also Underwriters Life Insurance Co. v. Cobb,* 746 S.W.2d 810, 817 (Tex.App.—Corpus Christi 1988, no writ). Characterizing the result of the conduct as a mere "economic loss" does not change this.

By point twelve, appellant alleges error in the lack of an independent jury finding of actual damages in tort. This point appears to correlate with the argument that the trial court should have segregated the components of damages in the issue it submitted, to insure that exemplary damages were not awarded for contractual injuries.

■ We have reviewed the objections to the charge contained in the record, and find no request or objection seeking to relate the elements of damages to underlying theories of recovery. By failing to specifically object, appellant waived any error in the form of the submission. *Birchfield v. Texarkana Memorial Hospital,* 747 S.W.2d 361, 368 (Tex.1987); *Wilgus v. Bond,* 730 S.W.2d 670, 672 (Tex.1987).

Appellant's point fifteen challenges the propriety of the amount of exemplary damages. Appellant alleges that the award of $1.8 million is so excessive and disproportionate to the actual damages that it must be the product of improper motive, bias, prejudice, or passion. While appellant concedes that under Texas law, the ratio between actual and exemplary damages may vary, it argues that an analysis of the factors in *Alamo National Bank v. Kraus,* 616 S.W.2d 908, 910 (Tex.1981) will prove the award unreasonable.

■ Factors in determining the reasonableness of an award of exemplary damages include the nature of the wrong, the character of the conduct involved, the degree of culpability of the wrongdoer, the situation and sensibilities of the parties, and the extent to which the conduct offends a public sense of justice and propriety. *Wright v. Gifford–Hill & Co.,* 725

777

S.W.2d 712, 714 (Tex.1987); *Alamo National Bank*, 616 S.W.2d at 910; *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 666 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.).

■ Appellant has not demonstrated that the amount of the award is unreasonable in light of the circumstances, or that passion, prejudice, or improper motive influenced the jury. We reject appellant's contention that San Benito "was in a position to protect its interests and to negotiate on an equal footing with Transamerica." Having reviewed the whole record, we decline to substitute our judgment for that of the jury. We overrule points twelve through fifteen.

■ By point sixteen, appellant contends that the judgment fails to reflect a credit owing as a matter of law for the $100,000 it paid to InterFirst. Transamerica claims that it made the payment under the policy and that it reduces any obligations toward San Benito. However, we have upheld the jury finding that Transamerica breached its contract. The payment was not made to San Benito and did not benefit San Benito.

Moreover, we have examined the record and find no plea of payment as required by Tex.R.Civ.P. 95. *See Carruth Mortgage Co. v. Ford*, 630 S.W.2d 897, 899 (Tex.App.—Houston [1st Dist.] 1982, no writ). We overrule point sixteen.

By points nine through eleven, appellant cites as error the trial court's failure to disqualify San Benito's trial counsel, Wiley & Fleuriet. In a motion filed on March 30, 1987, it objected to the firm's representation based on the firm's prior receipt of a fee of $825.88 from Transamerica covering the title policy it issued to San Benito. It based its objection on State Bar Disciplinary Rule 5–105 A and B. On the record, the trial court ruled the motion waived, stating it was not filed or brought to the court's attention until minutes before jury selection, although appellant knew of the potential problem for more than a year.

■ We will reverse only if we find that an error amounted to such a denial of appellant's rights as was reasonably calcu-

lated to cause and probably did cause rendition of an improper judgment. Tex.R.App. P. 81(b)(1). We fail to see how appellee's attorneys' participation in the real estate closing prejudiced the case or caused rendition of an improper judgment. There is no evidence that appellee's attorneys obtained any confidential information in their prior representation, or that the representation was substantially related to the current suit based on the mishandling of an insurance claim. We overrule points nine through eleven.

Having ruled on the dispositive points, we decline to consider appellant's remaining points. We AFFIRM the trial court's judgment.