NUMBER 13-98-342-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


________________________________________________________________________


MCALLEN INDEPENDENT SCHOOL DISTRICT
, Appellant,


v.



VEGA ROOFING CO., JUAN VEGA, 

AND COMMERCIAL INDEMNITY 

INSURANCE COMPANY
, Appellees.

________________________________________________________________________


On appeal from the 139th District Court


of Hidalgo County, Texas.


________________________________________________________________________


O P I N I O N



Before Chief Justice Seerden and Justices Hinojosa and Rodriguez


Opinion by Chief Justice Seerden





 McAllen Independent School District appeals a judgment rendered
against it in a breach of contract case. We affirm.

Factual and Procedural Background


 In June of 1994, McAllen Independent School District ("McAllen")
entered into a contract with Vega Roofing Company, Inc. ("Vega
Roofing") for roofing repair work at McAllen High School. The roof
consisted of a metal deck layered with concrete, tar impregnated felt,
gravel, foam, and a final acrylic coating applied on top. Under the
contract, Vega Roofing was to remove and replace areas of wet foam as
identified by infra-red scan, clean and dry the roof, and apply a new
acrylic coating to the roof. McAllen failed to complete payments
to Vega Roofing under the contract, and Juan Vega and Vega Roofing
filed the underlying action alleging breach of contract against McAllen. 
McAllen counterclaimed for breach of contract, breach of express and
implied warranties, and negligence. McAllen also filed a third party
petition against Commercial Indemnity Insurance Company
("Commercial Indemnity"), the bonding company for Vega Roofing,
seeking enforcement of the payment and performance bonds and
alleging fraud. 

 At trial, the court granted a directed verdict against Juan Vega
regarding his individual claims, a directed verdict for Commercial
Indemnity regarding the fraud claim against it, and a directed verdict
against McAllen on its negligence cause of action against Vega Roofing. 


 According to the jury's findings, McAllen failed to comply with the
contract and its failure to comply was not excused. Vega Roofing did
not breach the contract, it substantially performed its obligations under
the contract, and it did not breach its warranty to repair the roof in a
good and workmanlike manner. The jury found that Commercial
Indemnity did not breach its performance bond.

 The trial court entered judgment for Vega Roofing for actual and
consequential damages of $100,171.40, and $92,000.00 in attorney's
fees, plus attorney's fees on appeal. Neither Juan Vega nor Commercial
Indemnity are parties to this appeal. 

 McAllen appeals the judgment against it by seven issues.

Substantial Performance


 By its first issue, McAllen asserts that Vega Roofing cannot
recover on a theory of substantial performance because it failed to prove
the appropriate credit due McAllen under the contract. Vega Roofing
responds that it performed its part of the contract completely and
McAllen was not entitled to a credit on the contract price.

 The doctrine of substantial performance allows a party to a
contract, who is himself in breach but who nevertheless substantially
completed performance, to recover damages for that performance. 
Dobbins v. Redden, 785 S.W.2d 377, 378 (Tex. 1990). A party that has
substantially performed a building contract is entitled to recover the full
contract price less the cost of remedying those defects which are
remediable. Id.; Vance v. My Apartment Steak House of San Antonio,
Inc., 677 S.W.2d 480, 481 (Tex. 1984); Sheldon L. Pollack Corp. v.
Falcon Ind., 794 S.W.2d 380, 382 (Tex.App.­Corpus Christi 1990, writ
denied). In such cases, the party seeking to recover on the contract has
the burden of proving that he substantially performed under the
contract, the consideration due to him under the contract, and the cost
of remedying the defects due to his errors or omissions. Vance, 677
S.W.2d at 483; Sheldon L. Pollack Corp., 794 S.W.2d at 380. The
doctrine of substantial performance is inapplicable to non-breaching
parties. Tacon Mechanical Contractors v. Grant Sheet, 889 S.W.2d
666, 670 (Tex. App.­Houston [14th Dist.] 1994, writ denied)(refusing to
apply substantial performance doctrine to bar recovery by non-breaching party); see Dobbins, 785 S.W.2d at 377-78 (substantial
performance allows defaulting party to recover on contract).

 McAllen argues that Vega Roofing's recovery was predicated on
substantial performance because Vega Roofing failed to submit an issue
on full performance and the jury was asked about substantial
performance rather than full performance. McAllen further argues that
because Vega Roofing failed to present evidence regarding the
reasonable and necessary cost of repairing, correcting, or completing
the work to achieve final completion, Vega Roofing failed to carry its
burden to establish any credit due to McAllen, thus barring recovery
under substantial performance. Ultimately, McAllen contends that the
deficiency under the substantial performance standard is fatal to Vega
Roofing's recovery because McAllen assumes that the jury's negative
answer to the question of whether Vega Roofing breached the contract
does not satisfy Vega Roofing's burden to prove complete performance. 


 We disagree with McAllen's assumption that Vega Roofing's
recovery was based on substantial performance. Vega Roofing's
pleadings do not invoke the substantial performance doctrine, but rather
allege breach of contract. At trial, Juan Vega testified that all the work
required by the contract documents was performed; that he believed
that the proper insurance was provided and accepted; that none of the
reported leaks were related to the roof; and that all defective materials
or workmanship was corrected. Vega Roofing further objected to the
submission of the substantial performance issue.

 The jury found that McAllen failed to comply with the contract;
that McAllen's breach of contract was unexcused; that Vega Roofing
did not breach the contract; that Vega Roofing did not breach its
warranty to repair the roofs in a good and workmanlike manner; and
that Vega Roofing substantially performed its obligations under the
contract. These fact findings necessarily imply that Vega Roofing
performed its obligations under the contract. This conclusion is
essentially acknowledged by McAllen in its second point of error, which
states: "the jury found that Vega Roofing did not breach the
subcontract." Moreover, "substantial performance" means that the
essential elements of a contract have been performed and is the legal
equivalent to full performance. Anderson v. Vinson Exploration, Inc.,
832 S.W.2d 657, 666 (Tex.App.­El Paso 1992, writ denied).

 Vega Roofing was a non-breaching party, and the doctrine of
substantial performance is inapplicable to non-breaching parties. 
Tacon Mechanical Contractors, 889 S.W.2d at 670; see Dobbins, 785
S.W.2d at 377-78. Accordingly, we overrule McAllen's first point of
error.

Conflict in Jury's Answers


 In its second point of error, McAllen alleges that a fatal conflict
exists between the jury's answer to question four finding that Vega
Roofing substantially completed the work on December 15, 1994, and
the jury's answer to question five finding that Vega Roofing did not
breach the contract. McAllen argues that these findings are in conflict
because the contract provided that time was of the essence, and Vega
Roofing did not perform the contract in a timely manner.

 In order to preserve error when jury answers are alleged to be in
fatal conflict, an appellant must object to the conflict before the jury is
discharged. City of Port Isabel v. Shiba, 976 S.W.2d 856, 860
(Tex.App.­Corpus Christi 1998, writ denied); Durkay v. Madco Oil Co.,
862 S.W.2d 14, 23 (Tex.App.­Corpus Christi 1993, writ denied); see
Tex. R. Civ. P. 295. McAllen failed to object to the jury's allegedly
conflicting answers before the jury was discharged, therefore, the
complaint that the jury's answers are in fatal conflict has been waived. 
Shiba, 976 S.W.2d at 860. McAllen's second issue is overruled.

Factual Sufficiency 


 By its third issue, McAllen argues that the jury's finding that Vega
Roofing did not breach the contract is supported by factually insufficient
evidence.

 In conducting a factual sufficiency review, an appellate court must
consider and weigh all of the evidence, not just that evidence which
supports the judgment. Maritime Overseas Corp. v. Ellis, 971 S.W.2d
402, 407 (Tex. 1998), cert. denied, 119 S.Ct. 541 (1998). The judgment
can be set aside only if it is so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and unjust. See
id.; Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). In conducting our
review, we are mindful that it is for the trier of fact, not this court, to
judge the credibility of the evidence, assign the weight to be given to
testimony, and resolve conflicts or inconsistencies. Perseus, Inc. v.
Canody, 995 S.W.2d 202, 205 (Tex.App.­San Antonio 1999, no pet.).

 McAllen argues that Vega Roofing breached the contract in three
separate instances by (1) failing to achieve substantial completion
within seventy days after commencement of work as required by the
contract and the notice to proceed; (2) failing to provide insurance as
required by the subcontract; and (3) failing to perform its work in
accordance with the plans and specifications for work and in a good
and workmanlike manner. 

 McAllen argues that Vega Roofing breached the contractual "time
is of the essence" clause requiring that all new work be substantially
completed seventy days after commencement of the project. The jury
found that Vega Roofing reached substantial completion on December
15, 1994, more than seventy days after it commenced work. 

 The contract at issue includes the following language in a
liquidated damages provision:

 OWNER and CONTRACTOR recognize that time is of the
essence in this Agreement and that OWNER will suffer
financial loss if the Work is not completed within the time
specified in Paragraph 3.1 above, plus any extensions
thereof allowed in accordance with Article 8 of the General
Conditions.


Both Article 8 and the "notice to proceed" under the contract authorized
the completion date to be extended for causes beyond the control and
without fault or negligence of the contractor. 

 At trial, Vega Roofing presented several reasons for extension of
the completion date. Although disputed, Vega presented some
testimony that he was unable to begin work in a timely manner due to
delay in receipt of an infra-red survey of the roof. Vega further testified
that McAllen diverted Vega Roofing from the roofing project at issue in
order to perform emergency repairs on other buildings not relating to
the contract itself. Testimony in the record also indicated that McAllen
on occasion ordered Vega Roofing not to work on the roofs because of
an election and because of the noise level created by the roofing repairs. 
Finally, Vega testified that there were some occasions on which Vega
Roofing was unable to work due to weather. According to Vega, the
contract was completed in late October of 1994. While the jury found
that the project was not substantially completed until December 15,
1994, the jury could have determined that the delays were for
unforeseeable causes beyond the control and without fault or
negligence of Vega Roofing. 

 Pointing to discrepancies within the insurance documents,
McAllen also contended that Vega Roofing breached the contract by
failing to provide insurance as specified by the contract. The contract
required that Vega Roofing procure $2,000,000 in insurance listing
McAllen as an insured. The jury had before it a certificate of insurance
with the required $2,000,000 coverage which listed McAllen as an
insured. At trial, Vega testified that he complied with the contract, and
that McAllen did not complain about the provided insurance. Given this
testimony, the jury could have found that Vega Roofing did not breach
the contract by failing to provide the requisite insurance. Moreover,
even if the jury had found that Vega failed to provide the specified
insurance, we do not see how any such breach could be a proximate
cause of McAllen's alleged damages in the instant case. 

 Finally, McAllen contends that Vega Roofing breached the contract
by failing to perform its work in accordance with the plans and
specifications for work and in a good and workmanlike manner. 
Specifically, McAllen alleged that Vega Roofing failed to properly
prepare the roof before laying a new coating by failing to clean the roof
and by failing to grind the old foam smooth, thus preventing adequate
adhesion of the coating to the underlying foam; that Vega Roofing
coated over gas lines and conduits, causing poor drainage; that Vega
Roofing had failed to locate and remove all of the wet or saturated
urethane foam insulation; that Vega Roofing sealed the weep holes
retarding drainage; that Vega Roofing failed to slope the roof, causing
poor drainage; that Vega Roofing had applied too much primer and too
little coating; and that the roof leaked.

 McAllen's expert, Edis Oliver, presented testimonial and
documentary evidence regarding the foregoing instances. Oliver
testified that Vega Roofing applied coating over gas lines and conduit
that ran across the roof, which caused dams preventing drainage from
the roof. Oliver testified that Vega Roofing had full responsibility for
examining the conditions affecting his ability to perform the work, and
that Vega Roofing had failed to locate and remove all of the wet or
saturated polyurethane foam insulation. Further, Oliver found evidence
of dirt between the layers of coating, indicating that the roof surface
had not been properly cleaned. 

 In so testifying, however, Oliver admitted that he did not compare
the pre-repair and post-repair infra-red scans of the roof to determine
the amount of polyurethane insulation to be replaced, as provided by
the contract. Oliver further agreed that the dirt found between the
layers of coating could have resulted from water drifting into the area
rather than the result of coating over dirt. 

 Oliver testified that his only experience in connection with
polyurethane foam roofs was approximately twenty years earlier when
he spent around two hours watching two separate roof installations. 
Oliver had never installed a polyurethane roof, and had not seen a
polyurethane roof in the last decade. Oliver performed no testing on the
roof. Oliver was unable to say whether the coating that Vega applied
was acrylic or urethane. Further, Oliver disagreed with another of
McAllen's experts regarding whether a sample of the roof showed signs
of delamination or reversion. Significantly, Oliver admitted that the
Vega Roofing personnel who were at the job site at the time of the
performance were in a better position to know whether the job was
done correctly than someone else reviewing the work four years after
completion.

 Michael Hamilton, a registered roof consultant who provided
expert testimony for McAllen, testified that the flow to the existing roof
drains had been blocked by the application of foam and subsequent
blistering, that weep holes had been sealed in the rise walls, and that
Vega Roofing failed to slope the roof to the drains. However, Hamilton
conceded that he could not tell whether Vega Roofing had replaced any
foam in the location of the weep holes. Hamilton also testified that
while he believed that moisture in the roof might cause blisters, he
admitted that there could be other causes.

 Hamilton admitted that he had never sprayed polyurethane foam
and that he was not an expert in polyurethane foam. Hamilton
admitted that whether the roof in question was applied properly was
outside his area of expertise. Further, Hamilton admitted that he stood
to gain financially if the roof were determined to be defective. 

 Lamoine "Buzz" Lackey, another of McAllen's experts, testified
that a "glaze" existed between the old coating and the new coating
which made it difficult for adhesion to occur, and that the glazing was
caused by Vega Roofing applying too much primer. Lackey further
found that Vega Roofing had applied an insufficient amount of coating. 

 On cross-examination, Lackey admitted that he had not done any
testing to determine whether Vega Roofing had used a primer. 
Moreover, Lackey testified that he believed the coating had been on the
roof for just two years when he inspected it, although the roof was
actually four years old at that time. Lackey admitted that in order to
calculate the thickness of the coating at the time it was applied, he
should have taken into account four years of degradation. Lackey only
inspected the roof on one occasion, and he testified that he did not have
enough time to adequately inspect the roof.

 Daniel Vela, a maintenance employee for McAllen, testified that he
observed Vega Roofing applying coating to the roof without cleaning it
first, and showed photographs of the roof illustrating the dirt. Vela
further identified areas along the walls where weep holes should have
been found, but were not because of the application of coating. The
photographs depicting dirt were taken in 1995, after completion of the
roofing project; none were taken during the roofing project. Vela
admitted that he did not personally observe anyone spray any weep
holes, and that he could not remember whether the weep holes had
been sprayed prior to Vega Roofing's work under the contract. While
Vela was a lead maintenance foreman for McAllen at the time of trial,
Vela served as a plumbing supervisor at the time that the roofing repair
work was performed.

 Richard Martell, Jr., a contractor who performed the infra-red
scans of the roof, testified regarding the pre-repair and post-repair infra-red scans. Martell testified that infra-red scanning locates focal hot
spots, which are areas of suspected moisture. Martell identified the
same focal hot spot on both the pre-repair and post-repair infra-red
scans of the roof. Martell admitted that he did not know whether that
area in fact had any moisture in it. Martell testified that the existence
of moisture in such areas should be confirmed by cutting into the foam. 
The contract required the removal of moisture saturated areas, not
removal of spots identified as focal hot spots. Martell's testimony was
not that Vega Roofing had failed to remove a moisture saturated area,
but rather that an area that had been identified by the first infra-red
scan was also subsequently identified by the second scan.

 Lionel Frederick, a McAllen employee, prepared a report showing
leak locations, and documenting multiple leaks over an extended period
of time. However, McAllen only performed one test to determine the
source of the leaks, and that test showed that the leaks were coming
from a side wall rather than the roof.

 Juan Vega testified that Vega Roofing had been in existence for
thirty years, and that it had performed hundreds of foam roof
applications. Vega testified that Vega Roofing performed all work
required by the contract, and that he provided proper insurance under
the contract. He testified that none of the reported leaks were roof
related, and that Vega Roofing had corrected all defective materials and
workmanship under the contract. 

 We note that the evidence in this case was sharply conflicting
regarding whether Vega Roofing did the work it contracted to do in a
good and workmanlike manner, or whether, as McAllen claimed, the
work was defective. Simply put, the jury resolved these issues in favor
of Vega Roofing and against McAllen. Although McAllen presented
evidence of defects in Vega Roofing's performance, Vega Roofing's
evidence is sufficient to support the jury's verdict. Certainly, the jury's
findings are not "so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust." Cain, 709 S.W.2d at 175. 
McAllen's third issue is overruled.

Consequential Damages


 In its fourth issue, McAllen argues that there is no evidence of
consequential damages, and therefore the trial court erred in awarding
a judgment that included actual and consequential damages. The trial
court submitted a broad form damage question, instructing the jury to
consider both actual and consequential damages, but asking for just
one total amount. The jury received the following instructions:

 You are instructed that the measure of damages for breach
of contract is the actual amount of the complaining party's
monetary losses suffered as a direct consequence of the
contract breach. In other words, it is the amount that places
the complaining party as nearly as possible in the position it
would have occupied had the defaulting party performed the
contract.


 You are further instructed that, in addition to direct
damages, the complaining party may also recover
consequential damages that it proves to be the natural,
probable and foreseeable consequence of the other party's
breach. A complaining party's proof of consequential
damages cannot be merely speculative.


McAllen objected to the failure to segregate damage findings. 

 The jury awarded Vega Roofing the sum of $100,171.40 in actual
and consequential damages. According to the evidence adduced at
trial, the balance remaining on the contract was $40,130.40. Vega
Roofing testified to an additional $40,000 for extra work and extra
contractual unit price work. McAllen thus argues that for purposes of
this appeal, it is therefore "assumed" that the jury awarded $80,132.40
in actual damages, and that the remaining sum, or $20,039.00, "had to
have been" awarded as consequential damages. 

 McAllen's argument requires this Court to speculate about the
components of the jury's award. It is improper for a reviewing court to
engage in conjecture about the composition of a damage award. 
Duggan v. Marshall, 7 S.W.3d 888, 894 (Tex.App.­Houston [1st Dist.]
1999, no pet.); Transit Management Co. of Laredo v. Sanchez, 886
S.W.2d 823, 826 (Tex.App.­San Antonio 1994, no writ). The jury may
or may not have awarded the full balance remaining on the contract,
and may or may not have awarded the full amount for extra-contractual
work. We cannot merely assume that the jury awarded these full
amounts, however, because the jury had before it additional evidence
concerning lost actual damages. We do not know, for example,
whether the jury's award included any amount for contractual interest
on payments due and unpaid. It would be improper for us to speculate
on how the jury divided its award of $100,171.40 among the various
elements of damages. See Hernandez v. American Appliance Mfg.
Corp., 827 S.W.2d 383, 389 (Tex.App.­Corpus Christi 1992, writ
denied).

 The only way that an appellant can successfully challenge a multi-element damages award is to address all of the elements and show that
the evidence is insufficient to support the damages award considering
all of the elements. Price v. Short, 931 S.W.2d 677, 688
(Tex.App.­Dallas 1996, no writ); Greater Houston Transp. Co. v.
Zrubeck, 850 S.W.2d 579, 589 (Tex.App.­Corpus Christi 1993, writ
denied). The failure to address an element of damages results in waiver
of the sufficiency challenge. Greater Houston Transp. Co., 850 S.W.2d
at 579. 

 McAllen does not argue that the evidence favorable to this verdict,
considered as a whole, is legally insufficient to support it. McAllen fails
to address the legal sufficiency of the actual damages. We therefore
reject McAllen's no evidence challenge regarding Vega Roofing's
damages. See Thomas v. Oldham, 895 S.W.2d 352, 359-60 (Tex.
1995).

 However, even if McAllen had not waived the issue, its challenge
to the sufficiency of the evidence of consequential damages would lack
merit. Vega Roofing presented uncontradicted evidence at trial
regarding its entitlement to contractual interest on amounts due and
unpaid. Vega Roofing further presented evidence that it incurred
substantial insufficient fund charges as a result of McAllen's failure to
make payment under the contract. As a result of the dispute at issue,
Vega Roofing lost its ability to obtain bonding, and thus was unable to
bid for large jobs. Therefore, if McAllen had preserved its right to
challenge the sufficiency of the evidence, we would hold that the jury's
damages award is supported by sufficient evidence. We overrule
McAllen's fourth issue.


Attorney's Fees


 In its fifth issue, McAllen argues that the trial court erred in
awarding attorney's fees to Vega Roofing because attorney's fees are
not recoverable against a school district as a matter of law. Because
McAllen failed to object to Vega Roofing's request for attorney's fees,
McAllen has waived this issue on appeal. City of Port Isabel, 976
S.W.2d at 860-61. In fact, in pleadings filed with the trial court,
McAllen essentially conceded that attorney's fees might be recovered
against it ("Both MISD and Vega Roofing have made claims for recovery
of their attorney's fees in this case. Neither party's entitlement to such
fees, of course, can be determined until liability is first determined by
the jury...."). We overrule McAllen's fifth issue.

Directed Verdict


 In its sixth issue, McAllen contends that the trial court erred in
granting a directed verdict for Vega Roofing on McAllen's claim for
negligent performance. 

 McAllen had requested an issue regarding whether or not Vega
Roofing was negligent in performing its work. The trial court granted
a directed verdict on this issue on grounds that only "contractual"
damages were involved in McAllen's claim against Vega Roofing. 
McAllen argues that it presented evidence of damage to the school
separate and apart from the roof contract in question; therefore, its
negligence cause of action should have been presented to the jury. In
making this argument, McAllen refers this Court to evidence concerning
reports of roof leaks.

 If the defendant's conduct would give rise to liability independent
of the fact that a contract exists between the parties, the plaintiff's
claim may sound in tort. Conversely, if the defendant's conduct would
give rise to liability only because it breaches the parties' agreement, the
plaintiff's claim ordinarily sounds only in contract. See DeWitt County
Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 105 (Tex. 1999). Thus, as a
general rule, if an express or implied contractual duty is negligently
performed, causing only economic loss, only a breach of contract
action may be maintained and a tort action for negligence is precluded. 
See, e.g., Formosa Plastics Corp. USA v. Presidio Eng'rs and
Contractors, Inc., 960 S.W.2d 41, 45-46 (Tex. 1998). 

 In Southwestern Bell Tel. Co. v. DeLanney, 809 S.W.2d 493,
493-95 (Tex. 1991), the Texas Supreme Court reviewed a plaintiff's
action against a telephone company for its failure to publish an
advertisement in accordance with the contract between the parties. 
The supreme court held that the claim arose solely from the contract
and the plaintiff's alleged damages were only for economic loss,
therefore, the action sounded in contract and not in tort. Southwestern
Bell Tel. Co., 809 S.W.2d at 495. 

 Similarly, in the instant case, McAllen's claim for negligent
performance arose from the contract, and the damages sought were
only for economic loss. See Parks, 1 S.W.3d at 105; Southwestern Bell
Tel. Co., 809 S.W.2d at 495. Therefore, we overrule McAllen's sixth
issue. 


Attorney's Fees on Appeal


 In its seventh issue, McAllen argues that the trial court erred by
awarding unconditional attorney's fees on appeal. In so arguing,
McAllen directs the Court's attention to the "applicable" part of the
judgment as follows:

 ORDERED, ADJUDGED AND DECREED that Plaintiff VEGA
ROOFING COMPANY recover an additional ELEVEN
THOUSAND AND NO/100THS DOLLARS ($11,000.00) as
attorney's fees, should MCALLEN INDEPENDENT SCHOOL
DISTRICT file a notice of appeal or otherwise attempt to
perfect an appeal to the Court of Appeals; that Plaintiff VEGA
ROOFING COMPANY recover an additional FIVE THOUSAND
NO/100THS DOLLARS ($5,000.00) as attorney's fees should
MCALLEN INDEPENDENT SCHOOL DISTRICT file a Petition
for Review with the Texas Supreme Court; and that Plaintiff
VEGA ROOFING COMPANY recover an additional THREE
THOUSAND AND NO/100THS DOLLARS ($3,000.00) as
attorney's fees, should a Petition for Review be granted by
the Texas Supreme Court.


We agree that any award of attorney's fees on appeal must be
conditioned on the receiving parties' success. Southwestern Bell Tel.
Co. v. Vollmer, 805 S.W.2d 825, 834 (Tex.App.­Corpus Christi 1991)
(holding that an award of appellate attorney's fees must be conditioned
on the outcome of the appeal), rev'd on other grounds, 995 S.W.2d 668
(Tex. 1998); Stable Energy, L.P. v. Newberry, 999 S.W.2d 538, 557
(Tex.App.-Austin 1999, pet. denied). However, the charge of the court
expressly provides such a condition in the paragraph immediately
preceding the award. 

 ORDERED, ADJUDGED AND DECREED, should MCALLEN
INDEPENDENT SCHOOL DISTRICT appeal this case and
should Plaintiff VEGA ROOFING COMPANY eventually prevail
on appeal, that Plaintiff VEGA ROOFING COMPANY recover
its appellate attorney's fees as found by the jury. 
Accordingly, it is further. . . .


Inexplicably, McAllen fails to reference this language in its brief or
argument. We find that the plain language of the judgment provides
that the award of additional attorney's fees to Vega Roofing is
conditioned upon Vega Roofing's success on appeal. McAllen's
seventh issue lacks merit, and we overrule it accordingly.

 Having overruled each of McAllen's issues, we affirm the
judgment of the trial court.

 


 

 ROBERT J. SEERDEN, Chief Justice


Do not publish
.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this 10th day of August, 2000.